Judge Marshall
delivered the Opinion of the Court.
George D. Brown holding anote on Samuel M’Meekin, for forty six dollars and seventy three cents, which was ¿[ue on the 22d of November, 1833, assigned it to David . . Hume, on the 30th of December, 1833, inpayment ola *449 debt due from him to Hume, telling him, at the same time, to ask M’Meekin two or three times for the money, and if he did not pay it, to sue him, and if he did not. make the money, he himself would pay it. On the day of the assignment, or within two days after, Hume called on M’Meekin -for the money, when M’Meekin told him, “he could not pay the money then, he must wait “untilhe returned from a trip down the river; if he “ could, he would pay him twenty dollars before he start- “ ed.” Hume also mentioned the subject to M’Meekih once or perhaps twice afterwards, but the answer made on these occasions, is not stated. On the 23d of January, 1834, a warrant was issued oh the note, oh which a judgment was rendered by a Justice-of the Peace; and an execution thereon was returned “no property found.”
Assignor as. as* signee: warrant, judgment andappeal ¡instructions as to diligence Sfc,
-Up to the 21s! or 22d of January, 1834, M’Meekih had property from which the amount of the note might have been made; about that time, some of his property was sent out of the way, and on one of those days, such as remained was taken by an attachment at the suit of a creditor.
It appears that all the parties above named resided ih Georgetown, and that two Justices of the Peace also lived in the same town, and two others within a mile-, who were in the habit of issuing warrants daily, and trying them upon their return.
It also appears, that Brown, the assignor, had another demand against M’Meekin,for the coercion Of which no step was taken until after the 23d of January — Brown himself having left Georgetown, for Philadelphia, on the 21st of that month. And it seems, that he and some others considered it at least doubtful-, whether M’Meekin was able to pay his debts at the time the note was assigned to Plume. But no suit was brought against him upon any other demand, from the date of the assignment, until the emanation of the attachment, on the 21st of 22dof January.
Hume sued out a warrant from a Justice of the Peace against Brown, the assignor, and obtained a judgment for the sum due on the note, with interest and costs; from which Brown appealed to the Circuit Court» Upon *450 the trial of the appeal, the facts above stated were proved, and the Court instructed the jury, in effect, that the answer of M’Meekin, upon ■ the first application of Hume for payment, obviated the necessity of making any further request, and rendered it incumbent on him, to sue immediately, within reasonable time; that the delay to issue the warrant until the 23d of January, was unreasonable, and that if the debt was lost in consequence of that'delay, they should find for the assignor. A verdict and judgment were thereupon rendered against Hume, and his motion for a new trial having been overruled, he prosecutes this writ of error.
Where the suit ■on an assigned note, must be in 'the Circuit Court, it must be bro’t "to the first term, -or the assignee will lose his re'Course;andaliko rule may apply in warrantcases, when thejusticos "have set days, a't 'regular intervals, for trying cases; but where they issue warrants at any time, and 'try them as soon as they are returned, (the most usual way,) the rule 3o osnot seem to be applicable; nor can any general rule, as to what would constitute due diligence, be laid down, for such cases. A delay of 24 days, in an ordinary case, 3s too long.
In cases of assigned notes, which are suable in the Circuit Court, it has been held, that the assignee does not use due diligence if he omit to take the proper steps for obtaining judgment on the assigned note, at the first term after it becomes due, or is assigned; and that by such omission, he loses his recourse upon the assignor. This rule might perhaps be also applied to the case of an assigned note under fifty dollars, if the Justice having jurisdiction held regular courts, on appointed days, at convenient intervals. But as the law, does not exact of the assignee that he shall abandon all other business, to go in pursuit of the obligor in the note, we do not think the rule can be properly applied, so as to require him, in a case like'the present, where the Justiceshaving jurisdiction of the case, issued warrants every day, and held their courts every day for trying them and rendering judgment, to proceed and obtain his .judgment at the first moment when, according to the practice of the Justice, a judgment might be rendered. If such were the rule, the delay of issuing a warrant for a day, or even for an hour, after the note was assigned, might be such negligence as to release the assignor; which, unless the circumstances were very peculiar, would be unreasonable.
It would be difficult, and we shall not attempt, to prescribe the exact rule of diligence upon an assigned note, where the parties are all living in the same town, and a judgment may be obtained on any day, and at almost any hour of the day. If anotéis assigned without any *451 expressions waranting an indulgence to the debtor, the circumstances alluded to, would leave no excuse for any delay which might have the appearance of indulgence. And we should think that in such a case, the suspension of legal process from the 30th of December, to the 23d of January, would be such a fail.ure of diligence as to release the assignor.
An agreement or directions on the part of the assignor, as to the mode ofinducing the obligor to pay • — as by calling upon him, and repeatingthecall, if that course is likely to be successful — may jus tifiy the assignee in delaying a suit, and save his recourse. But, he must act in good faith and discreetly; and if the debt is lost by his agreement with the debtor to indulge him, or by careless - ness and disregard of the assignor’s interest, the loss will fall on the assignee. And—
But when, as in the present case, the assignment is accompanied by an agreement or directions on the part of the assignor, that, before resorting to coercion, the assignee shall try the effect of repeated solicitations for the money, the legal rule of strict diligence cannot with justice be applied, either in determining the length of time after the assignment, within which the process of law shall be resorted to, or the energy and rapidity with which the personal demands shall be made on the debtor.
The intention of the parties seems to have been, that before the note should be sued on, a fair experiment should be tried of obtaining payment by dunning or coaxing the obligor. Of course, it was implied that there should be a reasonable interval between the several applications; and we cannot say, that the period which actually intervened between the date of the assignment, and the issuing of the warrant, was too great for making the experiment, as intended. Good faith, however, required, that whenever it became apparent that any further personal solicitation would be wholly fruitless, or that any further delay of suit would endanger the debt itself, the assignee should immediately with all convenient despatch have had his warrant issued, and proceeded to coerce the money by execution. If he failed thus to proceed, and by such failure, lost the opportunity of making the debt out of the property of the obligor, the loss should be his own.
But the answer given by M’Meekin, upon the first application of Hume for the money, was not, in our opinion, such as necessarily to preclude all expectation of success from a repetition of the demand; and further delay, for the purpose of further solicitation, may possibly have been consistent with the good faith required of Hume by the terms on which the note was received, *452 and with the sound exercise of that discretion, as to the time and manner of seeking payment, with which he was invested, by the assignor. If the delay of suit after the first application, to M’Meekin, was in consequence of an acceptance of the terms then offered by him, we have, no doubt that any loss consequent on the delay should fall upon Hume, the assignee. But if the suit vyas delayed for the purpose of making further solicitation for the money, and with a reasonable expectation that by further urgent solicitation it might be obtained, and if such further solicitations were in fact made, we think the delay with that view was not unreasonable, unless the assignee, in the mean time, had good reason fo suppose that, by such delay* the debt might be lost.
Where, the as.SJgnor requests the assignee to postpone thesuit. tingencies, as tó. wWch^here'"if some proof — the upon the Assignnient) must be whether the °delay was aceorderstandingofthe parties or not— assume that assignee, in such a. case, was bound tq sue immedi^tply, .was error.
We think therefore, that the Court erred in perempto- ^ . , , r nly instructing the jury, that, upon the answer of M’Meekin to the first application for payment, it became the duty of Hujnefcto sue immediately, in reasonahie anh that the delay until the 23d of January, was unreasonable. Whether Hume had any reasonable §rounh? after the first application, to suppose that a furthel application might be more successful, was a fact which the jury had a right to determine, from a consideration, not only of the reply then made, but also of the circumstances of M’Meekin and his ability to pay if disposed to.do so. And the Court erred in withdrawing this enquiry from the jury, by assuming that no further application was necessary or could have been useful, * ‘
Wherefore the judgment is reversed, and the cause remanded for a npw trial, on principles consistent with, this opinion..